IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMIAH COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-952-L |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED**.

### I.  Procedural Background

Plaintiff's applications for benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 21-34). The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since March 25, 2008, the alleged disability onset date. At step two, the ALJ determined that Plaintiff has the following severe impairments: history of seizures; history of drug dependency in early remission; anxiety; schizophrenia, paranoid type; major depressive disorder; and schizoaffective disorder. (TR. 23). At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 26).

At step four, the ALJ found that Plaintiff had no past relevant work, thus he could not perform his past relevant work. (TR. 32). The ALJ further found that Plaintiff has the residual functional capacity (RFC) to perform light work, except that he should avoid moderate exposure to hazards due to history of seizures; and that claimant can understand, remember and carry out simple instruction with routine supervision, but should not work with the general public. (TR. 30). At step five, the ALJ applied the Medical Vocational Rules (Grids), specifically Rule 202.20, which directed a finding of "not disabled." (TR. 33-34). Accordingly, Plaintiff was found to be not disabled from March 25, 2008, the alleged onset date, through May 4, 2012, the date of the ALJ's decision. (TR. 34).

### III. Issues Presented

Plaintiff urges on appeal that the ALJ's decision is not supported by substantial evidence. In particular, Plaintiff argues that the ALJ got the onset date wrong; the ALJ's RFC was improper as was the use of the Grids; the ALJ's failure to use the vocational expert (VE) was error; the ALJ erred in his analysis of Plaintiff's credibility; and the ALJ erred in his analysis of Plaintiff's GAF scores.

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

#### A. Plaintiff's Onset Date

Plaintiff first argues that "the ALJ got the onset date wrong." (ECF No. 13:8). The ALJ's decision reflects that, at the hearing, Plaintiff's onset date was amended to March 25, 2008 at the request of Plaintiff's counsel, but Plaintiff contends that the date was changed yet again to January 1, 2009 in a post-hearing brief (TR. 21, 276). Plaintiff cites no authority that the alleged error warrants a remand, thus Plaintiff's undeveloped and unsupported argument will not be considered further. *See United States v.*

*Hardman,* 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner. . . . are waived.").

### B. The ALJ's analysis at steps four and five

Plaintiff alleges several errors at steps four and five of the sequential evaluation process. First, that the ALJ's RFC was improper as was the use of the Grids; and second that the ALJ's failure to use the vocational expert (VE) was error.

### 1. Plaintiff's RFC

Plaintiff argues that an RFC limiting him to avoiding only "moderate exposure to hazards . . . . with…routine supervision" is not supported by substantial evidence. (ECF No. 13:6). The Commissioner correctly responds that Plaintiff challenges the RFC, yet fails to cite medical evidence which would establish greater limitation than the ALJ found. (ECF No. 16:5). In his decision the ALJ noted that the medical evidence established that Plaintiff's seizures were sufficiently controlled by medication; that there was no record of recent treatment for seizures; and that his last reported seizure was in January 2010. (TR. 31). The ALJ also stated that the consultative psychologist, Dr. Poyner, found no sign of psychological instability at the time of the evaluation nor did Plaintiff appear paranoid, anxious or depressed. Dr. Poyner also opined that Plaintiff's psychological functioning was sufficient to meet the demands of daily living (TR. 26, 796, 798). Plaintiff argues that the testimony of his uncle establishes greater limitation than recognized in the RFC, however, testimony of symptoms and restrictions alone does not establish disability or functional limitations. 20 C.F.R. § 404.1529; SSR 96-7p.

4

Plaintiff failed to meet his burden at step four to present supported evidence documenting actual functional limitations resulting from his impairments. 20 C.F.R. §§ 404.1528(a), 404.1529. *See Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir. 1988) (proper focus of a disability determination is not on the diagnosis, but rather on the extent of limitations that prevented claimant from maintaining regular employment). Thus, the ALJ's RFC determination is supported by substantial evidence in the medical record and will not be disturbed on appeal.

### 2. The Grids

Plaintiff next argues that the ALJ's use of the Grids at step five was improper. In particular, Plaintiff states that he has significant non-exertional limitations in his RFC that preclude reliance on the Grids. (ECF No. 13:11-13). The Commissioner promulgated the Grids—to assist with the burden at step five of the sequential process. See 20 C.F.R. pt. 404, subpt. P, App. 2. "The grids are matrices of the 'four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.' " *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983)). "The grids should not be applied conclusively in a particular case unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (quotation and alteration

omitted). In *Mitchell v. Astrue,* 498 F. App'x 757 (10th Cir. 2012) the Tenth Circuit observed

> that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson,* 987 F.2d at 1488. The nonexertional impairment "must interfere with the ability to work." *Id.* Use of the grids is foreclosed only where the "nonexertional impairments are significant enough to limit [the claimant's] ability to perform the full range of jobs" available. *Channel [v.],* 747 F.2d [at] 583[ ]. In fact, the grids may be used for claimants with nonexertional impairments "whenever the claimant can perform a substantial majority of the work in the designated [residual functional capacity] category." *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). While an ALJ may determine that a nonexertional impairment has only a negligible effect on the range of jobs available, he "must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler,* 814 F.2d 1456, 1465 (10th Cir. 1987). And "once a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment, the fifth step in the sequential evaluation process." *Hargis [v. Sullivan],* 945 F.2d, [1482,] 1488 [10th Cir. 1991].

*Id.* As did the ALJ in *Mitchell,* the ALJ here found severe mental impairments that did not meet or equal a listed impairment; noted moderate difficulties in concentration, persistence, or pace; and, formulated an RFC for light work in which claimant could perform simple tasks with routine supervision, never being required to relate to the general public. *Id.* (TR. 30). Likewise, the court observed that the ALJ, as did the ALJ here, specifically referenced the claimant's mental impairment in the RFC and noted the RFC's support both by the medical evidence and by the opinions of the State agency psychologists. *Id.* (TR. 30-32).

6

The same parallels hold true through the next part of the court's analysis. Both ALJs considered their respective claimant's age, education, work experience, and RFC, and found there were jobs existing in significant numbers in the national economy that the claimants could perform. *Mitchell,* 498 F. at 759; (TR. 33). Both ALJs relied on Social Security Ruling 85–15 in finding the claimants retained the mental skills required for unskilled work and both concluded the respective claimants retained the capacity for unskilled light work with routine supervision. *Id;* (TR. 30).

With regard to the ALJ's support for his conclusion that Plaintiff in this case could perform substantially all unskilled light work jobs, *Mitchell* is distinguishable because the claimant in that case did not share Plaintiff's restriction from work hazards. Nonetheless, consistent with the findings in *Mitchell,* the ALJ properly supported his determination that Plaintiff could still perform a substantial majority of unskilled light work despite a work hazard restriction by concluding—in reliance on SSR 85–15—that "[r]estrictions against unprotected elevations and proximity to dangerous moving machinery are not significant at all exertional levels. . . . The non-exertional limitations had little or no effect on the occupational base of unskilled light work." (TR. 33).

As in *Mitchell,* the ALJ here, supported his conclusive reliance on the Grids by discussing Plaintiff's non-exertional impairments and how those impairments would impact job performance under SSR 85–15, concluding that the non-exertional impairments did not limit his ability to perform substantially all unskilled light work. (TR.

7

30-33). Thus, the ALJ did not err in applying the grids to determine that Plaintiff was not disabled.

### 3. VE Testimony

Plaintiff also argues that the ALJ erred by not obtaining the testimony of a VE. (ECF No. 13:14-18). In particular, Plaintiff urges that VE testimony was required because of Plaintiff's inability to sustain gainful activity; and the need to question the VE as to any erosion of the occupational base caused by all of Plaintiff's non-exertional impairments. "The Grids are a shortcut that eliminate the need for calling in vocational experts." *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992) (internal quotations and citations omitted). If a claimant fits within a "not disabled" grid category, the Commissioner presumes that sufficient jobs exist in the national economy that the claimant can perform.

As previously discussed, the ALJ's conclusive reliance on the Grids was appropriate, and his findings were supported by substantial evidence, thus testimony of a VE was unnecessary.

### C. The ALJ's Credibility Analysis

Plaintiff also challenges the ALJ's analysis of his credibility. (ECF No. 13:18-21). "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the

proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.* at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

In this case, the ALJ made the following credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant had a long history of drug abuse and Red Rock considers him in early partial remission from drug dependency (Exhibits 20F, 21F). In April 2011, he had diagnosis of schizoaffective disorder and polysubstance dependence (Exhibit 21F/18); medication includes saroquel and halcion. At no time does the claimant exhibit evidence of delusions or hallucination at his office visits, and the absence is consistently noted. The claimant's credibility is not enhanced by his history of drug abuse and his very minimal earnings record as shown by queries. (Exhibits 7D, 8D).

(TR. 31). The ALJ thoroughly discussed the medical evidence, the Plaintiff's testimony, and Plaintiff's activities of daily living. (TR. 23-32). In particular, the ALJ observed that Plaintiff's medications sufficiently controlled his mental impairments and his seizures; and that he "has located no treating physician, psychologist or psychiatrist opinion indicating restrictions on the claimant's activities or specifically assessing his level of functioning. (TR. 31, 32).

Plaintiff also makes the now familiar "*Bjornson*" argument—that the ALJ should have first evaluated Plaintiff's credibility and then formulated his RFC finding. (ECF No. 13:18-19). Plaintiff's *Bjornson* argument is without support in the Tenth Circuit. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1170 (10th Cir. 2012) ("use of ... boilerplate is

problematic only when it appears 'in the absence of a more thorough analysis.' ") (quoting *Hardman v. Barnhart,* 362 F .3d 676, 679 (10th Cir. 2004)). Last year, the Tenth Circuit specifically referenced a claimant's reliance on the Seventh Circuit decision in *Bjornson*, stating

> *1 Relying on *Bjornson v. Astrue,* 671 F.3d 640, 645–46 (7th Cir. 2012), [claimant] urges this court to reverse because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before discussing the factors that go into making that finding, including the credibility determination. We decline to reverse on this ground.

*Romero v. Colvin,* 563 F. App'x 618, 620, n 1 (10th Cir. 2014). The undersigned finds that the use of the template in this case is not improper.

Because the ALJ's analysis of the Plaintiff's credibility is supported by substantial evidence in the record as a whole, the decision of the ALJ on this point should be affirmed.

### D. Plaintiff's GAF Scores

Lastly, Plaintiff argues that the ALJ erred in not recognizing that Plaintiff's low GAF scores, lengthy psychiatric hospitalizations, and multiple prescription medications constitute "overwhelming evidence" of Plaintiff's disability. (ECF No. 13:22-24). As previously discussed, the ALJ corrected observed that no treating or examining physician restricted Plaintiff's activities or assessed his level of functioning. (TR. 31, 32).

As to Plaintiff's GAF scores, only one score is referenced by Plaintiff, a score of 70 attributed to Plaintiff's treating physician, Dr. Stow who gave Plaintiff a GAF of 70.

The ALJ also included in his decision a reference to a second GAF score of 70 assigned to Plaintiff by consultative examining physician, Dr. Thorson (TR. 27, 28). The ALJ later explained that "the claimant has had varying Global Assessment of Functioning scores by consulting/examining/treating psychologists. The Administrative Law Judge notes that the global assessment of functioning is not intended for forensic purposes, such as an assessment of disability or competency or the individual's control over such behavior." (citation omitted) (TR. 31).

Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job, a GAF score of 70 indicates "Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), (4th ed. 1994), p. 34. The ALJ appears to have adopted the scores, and the underlying opinions of the physicians who assigned the scores, thus there is no error.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **March 3, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 17, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE